**FLORIDA TELEPHONE CORPORATION v.**
**FLORIDA RAILROAD COMMISSION**
**et al.**

No. 5882.

Circuit Court of Appeals, Fifth Circuit.

March 6, 1931.

J. Prince Webster, of Atlanta, Ga. (J. Prince Webster, of Atlanta, Ga., and R. P. Hamlin, of Tavares, Fla., on the brief), for appellant.

Theo. T. Turnbull, of Tallahassee, Fla., for appellees.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

By its bill in equity the appellant sought an injunction restraining the enforcement of an order of the appellee Florida Railroad Commission prescribing a schedule of rates and charges for appellant's telephone business at Ocala, Fla. After hearing evidence, the court rendered a decree enjoining and restraining the appellees from interfering with the appellant in adopting and collecting rates not to exceed those specified by the court for telephone service furnished by appellant at its local exchange at Ocala, without prejudice to the rights of the Florida Railroad Commission to re-examine and adjust said rates in the future. Under the maximum rates fixed by the court, appellant's revenue would be increased above what it would have received under the rates prescribed by the Railroad Commission. Appellant contends that the rates allowed by the decree are confiscatory as a result of the undervaluation by the court of the property useful for and used in appellant's telephone business in Ocala and of the court's failure, in estimating the amounts of appellant's revenue from the rates allowed, to take into consideration items shown by the evidence and properly chargeable against gross revenue. Criticisms of the result reached by the court and of the methods adopted in reaching that result are based on the grounds that in fixing the going concern value of the property the court disallowed items or elements that should have been appraised and included in that value; that the cost of financing shown by the evidence should have been added in determining the value of the property useful for and used in the business; that the amounts allowed by the court for accrued and annual depreciation were substantially more than the evidence showed; that the item of uncollectible revenue shown by the evidence should have been included in computing operating costs; and that the evidence called for an allowance for an increase of wages, and for an allowance for regrading or reclassifying the services rendered by reason of changes in such services following an increase of rates.

As to the court's action with reference to the matter of going concern value, it is enough to say that in our opinion it does not appear from the record that the court undervalued that item.

■ The above-mentioned claim as to cost of financing is based on evidence showing that appellant, when it bought the Ocala property in 1926, acquired the amount needed to pay the purchase price by selling its preferred stock having a par value of $100 a share at the price of $88 a share. The amount of the discount is asked to be treated as an element of the value of the property acquired. The value of such property is not increased by a mere change of its ownership. The value after the sale would have been the same if, instead of appellant getting the amount of the price by selling its preferred stock at a discount, it had paid the price with cash it had in hand or which it obtained by disposing of its obligations or securities at the par or face value thereof. Such an expense so incurred by the buyer in getting the funds required to enable it to pay the purchase price cannot properly be regarded as an element of the value of the property bought, to be determined in fixing rates to be charged, that expense being one which need not have been incurred by a buyer whose financial condition or credit was such as to enable him to get funds on better terms.

■ Three engineers, Mr. E. B. Greene, an engineer of the Florida Railroad Commission, Mr. George Martin and Mr. J. K. Johnston, the qualifications of all of whom were admitted, testified before the court as to depreciation. It appeared from the testimony of Mr. Greene that he inspected between 50 and 100 of the 1,300 telephone stations at Ocala, and that in estimating depreciation he was influenced by what the books of the owner showed as to the increase from year to year of the number of telephones in use; that showing apparently being treated by him as evidence of the age of equipment which was not seen or examined by him. Mr. Martin stated that he made a personal observation of practically all of the property, and that he used the observed depreciation basis, which has no reference to any book record, or anything else than the amount of money it would take to restore the property to 100 per cent. operating condition. Mr. Johnston stated that he visited and tested more than 50 telephones, that he saw all of the telephone property in the city of Ocala and a large part of the properties outside of Ocala, that he arrived at the depreciated condition of the property by personal inspection of that portion which he saw, and by applying the same rate to the remainder; and that the only way of appraising depreciated property is by personal inspection. According to the testimony of Mr. Greene, the percentage of depreciation was substantially greater than that shown by the testimony of the other two engineers. The court's opinion contained the following:

"The Court is of the opinion that the preponderance of the evidence fails to establish the incorrectness of the figures arrived at by the defendant in determining the present physical value of the property as depreciated, particularly in view of the fact that if the low value found by the engineer Martin be used in conjunction with the high depreciation figure found by Engineer Johnston, a result not greatly different from that of respondent's engineer will be arrived at. It is therefore the view of the Court that the respondent's figures on this item are to be used in computing the rates. * * *

"The Court is unable to say from the evidence that the complainant has sustained the burden of establishing that the allowance used by the commission for annual depreciation is incorrect. * * * "

The just set out statements indicate that the court, in considering the testimony of the three engineers on the subject of depreciation, assumed that there was a presumption in favor of the correctness of the testimony of the appellee's engineer, and that there was no ground for preferring estimates as to depreciation which were based on observed conditions over averages based on assumed probabilities. It appears that the court, in passing on the question of depreciation, applied rules not recognized by law. The appellant had the burden of proving the value of its property useful for and used in its telephone business, that value being a fact required to be made known to the court for it to be enabled to determine what rates for the services rendered would be reasonable and nonconfiscatory; but on the question as to such value the law raised no presumption in favor of the testimony on the subject introduced by the appellee, or against that introduced by the appellant. Apparently the court, in adopting appellee's figures as to depreciation, failed to discriminate between estimates based on observed conditions of the property and an estimate largely based on conjectures as to the age and condition of equipment. Pacific Gas & Electric Co. v. City and County of San Francisco, 265 U. S. 403, 44 S. Ct. 537, 68 L. Ed. 1075.

■ The court ruled that in computing operating costs no allowance should be made for uncollectible revenue. Evidence showed that the systems of accounts prescribed by the Interstate Commerce Commission and by the Florida Railroad Commission provided for the item uncollectible revenue, and required it to be set up. The revenues shown on such accounts reflect the total amount of billings. Under a rule of the Florida commission a subscriber gets telephone service on credit for at least one-third of each month, the stoppage of the service not being permitted before the expiration of that time. The testimony of appellant's president included the following:

"The company is authorized by the Railroad Commission rules to collect rentals in advance, such authorization providing that if the rentals are not paid by the 10th of the current month, we can discontinue the service. However, such a policy during present conditions, and conditions that existed at that time, would only result in a great reduction of revenue on account of general financial conditions. If we discontinued service with everyone who did not pay by the 10th of the month, there would not be near as much revenue as shown there, and the way the tolls are billed we must necessarily charge forty days' tolls to each subscriber before we can discontinue service,—that is, our bills are made out from the 20th to the 20th, so it would be forty days of toll service before, under the Commission's ruling, we would be authorized to discontinue the service. On exchange revenue, we are permitted to discontinue the service if bills are not paid by the 10th of the month. However, toll revenue is included in the total revenue, but deducted from the actual income. I do not believe that if we insisted upon payment in accordance with the Commission's rules that the people who have telephone service would pay it. There has been a large percentage of our subscribers who are perfectly good financially, but who would not have a very regular income and would not have the money every month to meet their bills; people of good sound responsibility who, if we were to discontinue their service, would become offended and we would lose the subscriber and revenue also. A large percentage of them pay when you let the bills run for some time. Of course, there is bound to be some losses, too."

It appeared from the evidence that a result of excluding any deduction on account of uncollectible revenue was to make appellant's operating revenue appear to be substantially more than it actually was. The amounts charged by the appellant against its customers for telephone services was less than its revenues actually received from that source by the parts of those amounts which were not voluntarily paid and turned out to be uncollectible. Appellant's apparent revenue from telephone services charged for properly was subject to a deduction on account of the part of it which was provable and proved to be uncollectible.

■ The court ruled against a claim of the appellant that it was entitled to an allowance on account of regrading or reclassifying telephone services following an increase of rates. This claim was based on the suggested probability of some subscribers changing to a lower priced service upon the increase of the rates for different services. This action of the court is sustainable on the ground that the evidence was not such as to require that it be regarded as furnishing a satisfactory basis for a conclusion as to what changes of the kind mentioned would occur following an increase of rates.

■ In behalf of the appellant it was contended that the court, in estimating appellant's operating expenses, should have allowed for a prospective increase of the wages of its employees at Ocala. The evidence did not show that appellant had increased the wages of its employees, or what wages would be fair and reasonable. The showing in this regard was such that the court is not chargeable with error for failing to include in appellant's operating expenses any definite amount to take care of a prospective increase of wages.

■ Appellant's bill contained allegations to the effect that its telephone property at Ocala was connected with the system of other companies extending beyond the state of Florida, so that it transacts an interstate as well as an intrastate business. The record does not indicate that in the trial any consideration was given to the circumstance that the property in question was used in interstate business. The matter of the apportionment of that property between the interstate and intrastate services should have consideration in another trial. Smith v. Illinois Bell Tel. Co., 282 U. S. 133, 150, 51 S. Ct. 65, 75 L. Ed. ——.

Because of the above-mentioned errors, the decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.

FOSTER, Circuit Judge, concurs in the result.